UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CYNTHIA MARA SHEAR,**

    **Plaintiff,**

v.                                                **Case No. 8:22-cv-1077-MSS-AAS**

**KILOLO KIJAKAZI,**
**Acting Commissioner,**
**Social Security Administration,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Cynthia Mara Shear requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including the transcript of the hearing before the Administrative Law Judge (ALJ), the administrative record, and the parties' briefs, the undersigned **RECOMMENDS** the Commissioner's decision be **AFFIRMED.**

**I.     PROCEDURAL HISTORY**

Ms. Shear applied for DIB on November 14, 2019 and SSI on September 14, 2020, alleging a disability onset of October 23, 2019. (Tr. 137, 226). Disability examiners denied Ms. Shear's applications initially and on

1

reconsideration. (Tr. 148, 167). Following a hearing, the ALJ issued a decision unfavorable to Ms. Shear on October 13, 2021. (Tr. 10–18). The Appeals Council denied Ms. Shear's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1–6). Ms. Shear now requests judicial review of the Commissioner's decision. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Background

Ms. Shear was fifty-two years old on the date of the ALJ's decision. (Tr. 494). Ms. Shear has some high school education and past work experience as a dental assistant and office manager. (Tr. 147–148).

### B.   Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is engaged in substantial gainful activity,[2] she is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, if a claimant has no impairment or combination of impairments that significantly limit her physical or mental ability to perform basic work activities, she has no severe impairment and is not disabled. 20

---

[1] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. §§ 404.1572, 416.972.

2

C.F.R. §§ 404.1520(c), 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, she is not disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[3] *Id.* Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing work that exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The ALJ determined Ms. Shear had not engaged in substantial gainful activity since October 23, 2019, her alleged onset date of disability. (Tr. 13). The ALJ found Ms. Shear has these severe impairments: degenerative disc disease of the lumbar spine without herniated nucleus pulposus or stenosis; status-post right knee replacement; and chronic pain syndrome. (*Id.*). However, the ALJ concluded Ms. Shear's impairments or combination of impairments fail to meet or medically equal the severity of an impairment in

---

[3] A claimant's RFC is the level of physical and mental work she can consistently perform despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

3

the Listings. (Tr. 14).

The ALJ found Ms. Shear had an RFC to perform light work[4] except:

> [Ms. Shear] can occasionally climb, stoop, kneel, crouch, crawl; however, she can never climb ladders, scaffolds, or ropes or work at unprotected heights. She must avoid concentrated exposure to extreme vibration, cold and heat temperatures, humidity, and wetness.

(Tr. 14).

Based on these findings and the testimony of a vocational expert (VE), the ALJ determined Ms. Shear could perform her past relevant work as a medical receptionist, a dental assistant, a dental office manager, and a sterilizer. (Tr. 17). As a result, the ALJ found Ms. Shear was not disabled from October 23, 2019, through the date of the ALJ's decision, October 13, 2021. (Tr. 18).

## III.   ANALYSIS

### A.   Standard of Review

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine thathe
 or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(6), 416.967(6).

Review of the ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). There must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Phillips*, 357 F.3d at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating the reviewing court must scrutinize the entire record to determine the

reasonableness of the Commissioner's factual determinations).

### B.  Issue on Appeal

Ms. Shear raises one issue on appeal: that the ALJ erred in his determination of Ms. Shear's RFC. (Doc. 19). In support of this argument, Ms. Shear contests the ALJ's conclusions on four categories of evidence the ALJ determined supported the conclusion that Ms. Shear is not disabled: (1) her conservative medical treatment, with particular focus on her radiofrequency ablation (RFA) treatment (*Id*. at 4–6); (2) her daily activities (*Id*. at 6–7); (3) her level of pain (*Id*. at 7–8); and (4) her work history (*Id*. at 8–11). The Commissioner responds that substantial evidence supports the ALJ's conclusions. (Doc. 22). The undersigned will examine each argument in turn.

#### 1. Conservative Treatment

Ms. Shear argues the ALJ incorrectly concluded she received only conservative medical treatment for her back and neck pain. (*Id*. at 4–6).

In considering Ms. Shear's subjective allegations of pain, the ALJ concluded the medical record indicated "a general lack of treatment, aggressive or otherwise, concerning [Ms. Shear's] neck, back, and upper extremity pain." (Tr. 16). The ALJ concluded, despite allegations of "debilitating spinal and upper extremity limitations . . . records show [Ms. Shear] pursued largely conservative measures for these impairments respectively, such as physical

6

therapy and home exercise." (*Id.*) (*citing* (Tr. 634)). The ALJ also noted Ms. Shear found modest relief in her neck and back pain through an RFA, epidural steroid injections, and a medial branch block. (Tr. 16) (*citing* (Tr. 431, 573, 648 831, 840, 923, 960)).

Ms. Shear notes the ALJ referenced only one June 11, 2020 RFA procedure conducted on Ms. Shear despite Ms. Shear receiving multiple other RFA procedures from December 2019 through June 2020. (Doc. 19, pp. 4–6) (*citing* (Tr. 16)). Ms. Shear also notes her self-reported pain level increased from 2020 to 2021, and argues the ALJ was incorrect to assert an epidural steroid injection was effective in reducing pain. (*Id.*). On that basis, Ms. Shear argues the ALJ's conclusions are not supported by substantial evidence. (*Id.*).

Substantial evidence supports the ALJ's conclusions on Ms. Shear's conservative course of medical treatment for her neck and back pain. Much of Ms. Shear's argument is dedicated to her posture that by only referencing one of Ms. Shear's several RFA procedures, the ALJ failed to evaluate all the medical evidence in the record and failed to adequately comprehend the scope of her treatment for her neck and back pain. *See* (*Id.*) ("the ALJ found that Ms. Shear had received one [RFA] and that it had proved to be successful in pain reduction . . . [but] [t]hat's not the only RFA Cindy Shear needed.").

Ms. Shear is correct insofar as the ALJ only explicitly discussed one of

Ms. Shear's several RFA procedures. (Tr. 16). But nowhere in the ALJ's opinion does the ALJ explicitly make the incorrect statement that Ms. Shear had only one RFA procedure, and (as noted in Ms. Shear's memorandum) the ALJ in other contexts referenced multiple times the exhibit containing the medical records reporting Ms. Shear's other RFA procedures. (Doc. 19, p. 5).

    This fact alone is insufficient to establish substantial evidence does not support the ALJ's conclusion that Ms. Shear received only conservative medical treatment for her neck and back pain. The remainder of Ms. Shear's argument on this point is similarly inconclusive. Ms. Shear correctly details the multiple epidural steroid injections and medial branch block (a form of anesthetic injection) she received for her neck and back pain. (*Id.* at 5–6) (*citing* (Tr. 1172). However, as noted in the ALJ's opinion, the medical record shows no evidence Ms. Shear's neck or back pain necessitated hospitalization. (Tr. 15).

    Ms. Shear is also correct that the specific citations in the ALJ's opinion do not explicitly support the conclusion that Ms. Shear's steroid injections and medial branch block support reduced Ms. Shear's level of pain. (Doc. 19, p. 6). However, as noted by the Commissioner, contemporaneous medical records from the same exhibits cited by the ALJ confirm as recently as February 2021 Ms. Shear was experiencing a reduced level of pain from her more conservative,

non-surgical medical treatment regime. (Doc. 22, p. 11) (*citing* (Tr. 932, 951, 1124)).

Ms. Shear has thus not established the ALJ ignored relevant medical evidence in concluding Ms. Shear's back and neck pain necessitated only conservative medical treatment. The undersigned thus recommends the court conclude substantial evidence supports the ALJ's conclusion that Ms. Shear received conservative medical treatment for her neck and back pain.

### 2. Daily Activities

Ms. Shear argues her daily activities do not support the ALJ's conclusion that she is able to perform light work. (Doc. 19, pp. 6–7).

In considering Ms. Shear's allegations of knee pain and dysfunction, the ALJ concluded a right knee replacement and subsequent rehabilitative therapy "were effective in salvaging use and range of motion of her knee such that she can perform light exertional activities." (Tr. 16). Though the ALJ noted detailed medical records showing Ms. Shear utilized a cane for ambulation and still managed a moderate level of pain in her knee, the ALJ expounded that as a result of her successful surgery and therapy, "[Ms. Shear] was and is able to tend to her personal needs, prepare simple meals, do light household cleaning and laundry, shop, and drive a car." (*Id.*).

Ms. Shear argues the ALJ incorrectly concluded she can continue to

participate in a variety of daily activities. (Doc. 19, pp. 6–7). Ms. Shear points to multiple 2020 questionnaires and reports detailing how Ms. Shear felt activities like showering and changing clothes grew more difficult due to the limited range of motion in her right knee. (*Id.*) (*citing* (Tr. 262, 265, 284)). Ms. Shear references further self-reported details on her difficulties cleaning, doing laundry, and shopping with a grocery cart. (*Id.*) (*citing* (Tr. 266, 267, 284)). Ms. Shear also cites to a correspondence filed after the ALJ adjudicated Ms. Shear's claim wherein Ms. Shear states her range of mobility has worsened such that she can no longer drive long distances. (*Id.*) (*citing* (Tr. 320)).

Substantial evidence supports the ALJ's conclusions on Ms. Shear's ability to perform her daily activities. The ALJ cited to multiple medical reports detailing how the combination of Ms. Shear's right knee surgery and rehabilitative physical therapy allowed her to regain a limited range of motion in her right knee. (Tr. 16, 636, 797, 806, 831, 930, 996). These medical reports consistently state Ms. Shear, though experiencing some pain and limitations in her right knee, does maintain a moderate range of motion in her knee, particularly when she utilizes a cane for assistance.

Ms. Shear's argument asks the court to reweigh the medical evidence in her favor, something this court cannot do. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citations omitted). The ALJ considered the relevant

medical evidence and concluded her knee surgery "was at least moderately effective and successful in salvaging her ability to maneuver and bear weight sufficiently such that she can execute and perform a range of light activities." (Tr. 16). The undersigned recommends the court conclude ALJ properly considered the medical evidence and substantial evidence supports the ALJ's conclusions.

### 3. Pain Level

Ms. Shear argues the ALJ mistakenly concluded Ms. Shear's consistent pain level was low enough that Ms. Shear can work on a regular and consistent basis. (Doc. 19, pp. 7–8). In support of this conclusion, Ms. Shear relies on the fact that Ms. Shear's most recent medical records show her experiencing severe pain, as well as the notion that Ms. Shear's pain oscillates between moderate and more severe over time. (*Id.*).

As previously discussed, the ALJ considered the relevant medical evidence and concluded despite Ms. Shear's subjective allegations of severe pain, Ms. Shear underwent only conservative treatment for her neck and back pain and was still able to perform daily activities despite the moderate pain and limited range of motion in her right knee. (Tr. 15–16). After examining the relevant medical evidence (including the exhibits cited by Ms. Shear), the ALJ concluded Ms. Shear "treated and effectively managed her chronic pain by

11

long-term pain-management options from prescription medication." (Tr. 16–17) (*citing* (Tr. 1170, 1181)).

Ms. Shear's arguments on her pain level, like her arguments on her level of daily activities, are again an attempt to reweigh the evidence in her favor. The undersigned thus recommends the court conclude substantial evidence supports the ALJ's conclusion that Ms. Shear's consistent pain level was low enough that Ms. Shear can work on a regular and consistent basis.

### 4. Work History

Ms. Shear's final argument is that the ALJ failed to consider her prior work experience when evaluating the credibility of her subjective allegations of pain. (Doc. 19, pp. 8–11). Ms. Shear details her extensive work history, wherein Ms. Shear maintained regular employment since her high school graduation in 1987. (*Id.* at 8–9). After suffering severe injuries from a car accident, Ms. Shear received disability benefits from June 2008 to January 2010. (Tr. 128–136). Ms. Shear returned to work from July 2010 through October 2019, after she received her right knee surgery. (*Id.* at 10) (*citing* (Tr. 240)).

Ms. Shear argues the ALJ erred by failing to explicitly consider her work history in assessing the credibility of her subjective allegations of pain. *See* (Doc. 19, p. 11) ("Someone who has demonstrated that she would go back to

work and do everything possible to work should be considered differently from someone who gives up right away and asks for disability at the least provocation.").

Substantial evidence supports the ALJ's consideration of Ms. Shear's work history. In addition to proffering hypotheticals rooted in Ms. Shear's work history to the VE, the ALJ discussed Ms. Shear's work history with Ms. Shear at length during the hearing. (Tr. 29–34, 43–47). The ALJ explicitly considered Ms. Shear's work history in concluding Ms. Shear under her RFC could perform her past relevant work as a medical receptionist, dental assistant, dental office manager, and sterilizer. (Tr. 17–18).

That the ALJ did not specifically note consideration of Ms. Shear's work history in adjudicating the credibility of her subjective allegations of pain is of little consequence because (as Ms. Shear concedes) the Eleventh Circuit has never held such consideration is necessary. (Doc. 19, p. 11). To the contrary, where "it is clear the ALJ reviewed and considered statements regarding [the plaintiff's] prior work record," courts in this district have generally concluded such consideration is not required. *Mahon v. Comm'r of Soc. Sec.*, Case No. 8:16-cv-1462-T-JSS, 2017 WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017). *See also Rios v. Acting Comm'r of Soc. Sec.*, No. 8:16-CV-152-T-PDB, 2017 WL 4216467, at *10 (M.D. Fla. Sept. 22, 2017) (collecting cases). The ALJ did so

here. Ms. Shear thus has not established the ALJ erred by not discussing how Ms. Shear's work history impacted the credibility of her subjective allegations of pain. Substantial evidence supports the ALJ's conclusions. The undersigned thus recommends the court conclude the ALJ properly considered Ms. Shear's work history.

## IV. CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that the Commissioner's decision be **AFFIRMED.**

**ENTERED** in Tampa, Florida on May 1, 2023.

_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely under 28 U.S.C. § 636(b)(1) waives that party's right to challenge

on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.